UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ANDERS, an individual,<br><br>                  Plaintiff,<br><br>  v.<br><br>HOHM TECH, INC., a California Corporation; and DOES 1-100 inclusive,<br><br>                  Defendants. | Case No. 5:22-cv-00979-SPG-KK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND ACTION TO CALIFORNIA SUPERIOR COURT [ECF NO. 15]** |

      Before the Court is Plaintiff Joseph Anders' ("Plaintiff") motion to remand this action to California Superior Court. (ECF No. 15 ("Motion")). This matter was originally set for hearing on August 15, 2022. Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds pursuant to Local Rule 7.15 that the matter is suitable for resolution without oral argument. The Motion has been taken under submission, and, for the reasons stated below, the Court DENIES Plaintiff's Motion.

**I.    BACKGROUND**

    **A.    Factual Background**

      Plaintiff, a resident of North Carolina, alleges that the lithium-ion battery used to power his electronic cigarette spontaneously exploded in his pocket, causing second-

degree burns across his left leg.  (ECF No. 1-4 at 3 ¶ 1).  The battery at-issue was wrapped in a "Hohm Tech" exterior coating.  (ECF No. 15 at 26 ¶ 3).  From this, Plaintiff concluded that Hohm Tech, Inc. ("Hohm Tech"), a California corporation, was the manufacturer responsible for the allegedly defective battery.  *See* (*id.*); (ECF No. 1-4 ¶ 1).

On November 17, 2020, Plaintiff filed a Complaint in the California Superior Court for the County of San Bernardino asserting claims of Strict Products Liability and Negligent Products Liability against Hohm Tech and Does 1-100.  (ECF No. 1-4 at 2-4).  However, on July 30, 2021, Hohm Tech filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Bankruptcy Court").  *See In re HOHM Tech, Inc.*, 6:21-bk-14150-MH (Bankr. C.D. Cal.) (the "Bankruptcy Proceeding").  Plaintiff was thereafter served with a Notice of Stay for these state court proceedings on August 3, 2021.  (ECF No. 15 at 26 ¶ 2.b).

Before the issuance of the Bankruptcy Court's Stay, Plaintiff and Hohm Tech had already engaged in considerable discovery.  (*Id.* at 25 ¶ 2.a).  By April 1, 2021, Plaintiff had served 36 Requests for Production, 56 Special Interrogatories, and Formal Interrogatories on Hohm Tech.  (*Id.* at 25 ¶ 2.a.ii).  Over the course of this discovery, Plaintiff concluded that the allegedly defective battery was manufactured by a Korean entity, Samsung SDI Co., Ltd. ("Defendant"), rather than Hohm Tech.  *See* (*id.* at 26 ¶ 3, 10 n.1).  On September 8, 2021, Plaintiff filed DOE Amendments to the Complaint naming Defendant as "DOE 1" and California corporation Samsung SDI America, Inc. ("Samsung America") as "DOE 2."  (ECF Nos. 1-11, 1-12).  At the time, Plaintiff continued to name Hohm Tech as a co-defendant in the action because he hoped to hold Hohm Tech jointly and severally liable for his alleged harms.  *See* (ECF No. 15 at 21 ("Hohm Tech *remained* a valid defendant as a link 'in the chain of production and marketing, from the original manufacturer down through the distributor and wholesaler to the retailer; liability of all such defendants is joint and several.'") (quoting *Kaminski v. W. MacArthur Co.*, 175 Cal. App. 3d 445, 455-456 (1985))).

**B.     Procedural History**

        1.     Plaintiff Begins Negotiations with Defendant

On or about September 29, 2021, Samsung America's counsel (who also serves as Defendant's counsel) approached Plaintiff regarding Samsung America's dismissal from the litigation. (ECF No. 19-1 at 2 ¶ 2). Samsung America explained to Plaintiff "that [Samsung America] [was] not a proper defendant because it is not in the chain of distribution for the 18650 lithium-ion battery at issue in this action." (*Id.*). Although Plaintiff harbored doubt about Samsung America's status as a viable defendant, *see* (ECF No. 15 at 28 ¶ 9 ("Nor is it clear what role, if any, Samsung America played in the distribution of the exploding battery.")), Plaintiff did not dismiss Samsung America from the suit.

On October 4, 2021, Plaintiff served Samsung America with the Complaint and Summons. (ECF No. 1-15). Defendant, however, insisted that it be served in compliance with Hague Convention procedures due to its status as a Korean entity. (ECF No. 15 at 27, ¶ 4). Because of the Hague Convention's onerous requirements, Plaintiff proceeded to negotiate with Defendant for alternative service procedures. *See* (*id.*). On October 11, 2021, Plaintiff offered to dismiss Samsung America from the suit if Defendant accepted service and filed an Answer to the Complaint. *See* (ECF No. 19-1 at 5). Defendant rejected this offer on October 13, 2022. (*Id.*).

        2.     Plaintiff Dismisses Hohm Tech and Samsung America From Suit

On October 28, 2021, Samsung America removed the action to the Bankruptcy Court pursuant to 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027. (ECF No. 1-19). Soon thereafter, on November 4, 2021, Samsung America filed a Motion to Dismiss for Failure to State a Claim, which included a Request for Judicial Notice of a decision in another matter holding that Samsung America was not in the chain of production for the lithium-ion batteries at-issue. (ECF No. 15 at 27 ¶ 5). According to Plaintiff, he did not dismiss Samsung America at that time because "Samsung America did not include a

declaration or other admissible evidence with its Motion, merely the decision from another Court." *See* (*id.*).

On November 23, 2021, Plaintiff filed a Motion to Remand to the Bankruptcy Court on equitable grounds under Federal Rule of Bankruptcy Procedure 9027(d) and 28 U.S.C. § 1452(b). (*Id.* at 27, ¶ 6). The Bankruptcy Court entered an Order remanding the case to state court on February 2, 2022. (ECF No. 1-23).

On March 2, 2022, Plaintiff and Defendant brokered an agreement. (ECF No. 15 at 28 ¶ 9). Plaintiff agreed to dismiss Samsung America without prejudice in exchange for Defendant's willingness to relax the Hague Convention's service rules. (*Id.*). Later that month, Plaintiff also received notice from the Bankruptcy Court that Hohm Tech's bankruptcy case was closed "with *no distribution* to the creditors." (*Id.* at 26 ¶ 2.e). "Rather than attempt to 'squeeze blood from a turnip,' Plaintiff chose to focus efforts on the entity that ultimately manufactured the exploding lithium-ion battery–[Defendant]" and moved to dismiss Hohm Tech from the suit without prejudice on April 11, 2022. (*Id.* at 28 ¶ 8, 16). Finally, on May 13, 2022, and pursuant to its agreement with Defendant, Plaintiff dismissed Samsung America from the present action. (*Id.* at 16). It is undisputed that Plaintiff never served a single discovery request on Samsung America up to this point. *See* (ECF No. 19 at 11).

### 3. Defendant Removes the Action to Federal Court

On June 7, 2022, Plaintiff served Defendant with its first round of state court discovery. (ECF No. 15 at 26 ¶ 2.f). Before serving any responses, however, Defendant removed the action to the United States District Court for the Central District of California on June 10, 2022. (ECF No. 1). This occurred nearly 19 months after Plaintiff's Complaint was originally filed against Hohm Tech in the San Bernadino Superior Court.

On July 8, 2022, Plaintiff moved to remand the action back to the San Bernardino Superior Court. (ECF No. 15). Plaintiff argues that remand is mandatory because Defendant's motion for removal was untimely under 28 U.S.C. § 1446(c)(1). On July 25, 2022, Defendant filed an Opposition to Plaintiff's Motion, arguing that the bad faith

exception to 28 U.S.C. § 1446(c)(1) applies.  *See* (ECF No. 19).  On August 1, 2022, Plaintiff filed a Reply.  (ECF No. 20).

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the United States Constitution and statute.  *See* U.S. Const. art. III, § 2, cl. 2. Title 28, United States Code, Section 1332 confers original jurisdiction on federal district courts over civil actions where there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Complete diversity exists where each named defendant is a citizen of a different state from each named plaintiff.  *See* 28 U.S.C. § 1332(a); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing *Caterpillar Inc. v. Lewis* 519 U.S. 61, 68 (1996)).  If a case initially lacking complete diversity at the time it is filed in state court subsequently becomes removable due to a non-diverse defendant being dismissed from the case, a defendant may remove the case to the federal district court based on diversity jurisdiction.  *See* 28 U.S.C. § 1441.  However, a civil action otherwise removable solely based on diversity jurisdiction under 28 U.S.C. § 1332(a) "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

Section 1446(c)(1) establishes a limitation period on removal, providing a defendant may not remove a civil action based on diversity jurisdiction more than one year after the action has commenced.[1]  28 U.S.C. § 1446(c)(1).  An exception exists to the one-year limitation period, if the defendant shows "the plaintiff has acted in bad faith" to prevent defendant from being able to remove the action.  28 U.S.C. § 1446(c).  Courts have applied

---

[1] "Commencement" refers to when the action was initiated in state court, according to state procedures.  *Fong. v. Beehler*, 624 F. App'x 536, 537 (9th Cir. 2015) (quoting *Bush v. Cheaptickets, Inc.*, 425 5.3d 683, 688 (9th Cir. 2005)) (internal quotations omitted).  Under California law, an action is initiated when the complaint is filed.  Cal. Civ. P. Code § 350. Therefore, in California, a defendant has one year from the time the complaint is filed to remove the action to federal court absent a finding of bad faith conduct by the plaintiff.

the bad faith exception to plaintiffs who join a defendant *solely* to prevent other defendants from removing the civil action, and then dismiss the non-diverse defendant after the one-year deadline has expired when the plaintiff could have kept the non-diverse defendant in the suit. *See, e.g.*, *Heacock v. Rolling Frito-Lay Sales, LP*, Case No. C16-0829-JCC, 2016 WL 4009849, at *2 (W.D. Wash. July 27, 2016); *Heller v. Am. States Ins. Co.*, Case No. CV 15-9771 DMG (JPRx), 2016 WL 1170891, at *2 (C.D. Cal. Mar. 25, 2016). However, it is "well established that the plaintiff is master of her complaint and can plead to avoid federal jurisdiction." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007) (internal quotations omitted), *overruled on other grounds by Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). Because "[courts] strictly construe the removal statute against removal jurisdiction" and there is a "strong presumption" against removal, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted); *see also Herrington v Nature Conservatory*, Case No. CV 21-240-GW-GJSx, 2021 WL 942749, at *3 (C.D. Cal. Mar. 11, 2021). "The removing party bears the burden of demonstrating that the plaintiff has acted in bad faith . . . ." *Id.* (citation omitted).

### III. DISCUSSION

Defendant does not dispute that it removed this civil action based on diversity jurisdiction more than one year after Plaintiff commenced the suit in state court.[2] However, Defendant argues that section 1446(c)'s exception from the one-year limitation should apply because Plaintiff acted in bad faith in naming California corporations Hohm Tech and Samsung America as defendants and dismissing them after the one-year limitation deadline. *See* (ECF No. 19 at 5).

---

[2] Plaintiff filed this action in the San Bernardino Superior Court on November 17, 2020. (ECF No. 1-4). Consequently, Defendant had until approximately November 17, 2021, to timely file for removal. Defendant instead removed this case on June 10, 2022, nearly seven months after the deadline. (ECF No. 1).

A. The Bad Faith Exception

Although the Ninth Circuit has not set a standard for applying the bad faith exception, "district courts within the Ninth Circuit have concluded that 'defendants face a high burden [when claiming] that a plaintiff acted in bad faith to prevent removal.'" *Anderson v. FCA US LLC*, Case No. CV 21-3125 PSG (JPRx), 2021 WL 2822398, at *3 (C.D. Cal. July 6, 2021) (quoting *Kulova v. Allstate Ins. Co.*, 438 F.Supp.3d 1192, 1196 (W.D. Wash. Feb. 10, 2020)); *see also Heller*, 2016 WL 1170891, at *2 (equating the standard to the "high threshold" the Ninth Circuit has set for the required showing of bad faith in the context of sanctions); *Heacock*, 2016 WL 4009849, at *3 ("The presumption against removal, coupled with Ninth Circuit precedent holding that bad faith in the sanctions context is a high burden, leads the Court to conclude that defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal.") (citation omitted).

When assessing whether a plaintiff has acted in "bad faith" to prevent removal, district courts generally consider the following factors: "(1) the timing of the naming and dismissal of the non-diverse defendant, (2) the explanation given for dismissal, and (3) whether the plaintiff actively litigated the case in 'any capacity' against the non-diverse defendant" before dismissal. *Anderson*, 2021 WL 2822398, at *3 (quoting *Kalfsbeek Charter v. FCA US, LLC*, 540 F. Supp. 3d 939, 943 (C.D. Cal. 2021)); *see also Torres v. Honeywell, Inc.*, Case No. 2:20-cv-10879-RGK-KS, 2021 WL 259439, at *3 (C.D. Cal. Jan. 25, 2021) (citations omitted). A court's assessment of bad faith "necessarily involves looking into the plaintiff's subjective intent, as the text of section 1446(c)(1) 'strongly suggest[s] intentionality and purpose.'" *Kalfsbeek Charter*, 540 F. Supp. 3d at 943 (quoting *Aguayo v. AMCO Ins. Co*, 59 F. Supp. 3d 1225, 1266 (D.N.M. Oct. 31, 2014)). "Since it would be extraordinary for a party directly to admit a 'bad faith' intention, his motive must of necessity be ascertained from circumstantial evidence." *Forth v. Diversey Corp.*, No. 13-CV-808-A, 2013 WL 6096528 (W.D.N.Y Nov. 20, 2013) (quoting *Cont'l Ins. Co. v. N.L.R.B.*, 495 F.2d 44, 48 (2d Cir. 1974)).

### B.     Plaintiff's Inclusion and Dismissal of Hohm Tech

Here, Plaintiff's decision to include as defendants Hohm Tech and Samsung America, two California corporations, in its state complaint initially precluded removal to this Court. Although Plaintiff named Hohm Tech as a defendant at the onset of the civil litigation and dismissed Hohm Tech approximately four months after the 28 U.S.C. § 1446(c)(1) deadline, Defendant does not focus its argument on the timing of those events. Instead, Defendant argues that Plaintiff's explanation for the dismissal demonstrates bad faith. For this proposition, Defendant asserts:

> Plaintiff claims that he dismissed Hohm Tech as a result of its bankruptcy filing, but Hohm Tech filed for bankruptcy in July 2021–nine months prior to its dismissal, and within the period for removal. The conflict between Plaintiff's arguments and his actions demonstrates that his actual intent behind naming California Defendants was to destroy diversity.

(ECF No. 19 at 10).

However, Plaintiff claims that he did not dismiss Hohm Tech based solely on its Chapter 7 filing but, instead, dismissed Hohm Tech when it became clear that Plaintiff could not financially collect a judgment from Hohm Tech. On March 30, 2022, Plaintiff received notice from the Bankruptcy Court that Hohm Tech's bankruptcy case was closed "with *no distribution* to the creditors." (ECF No. 15 at 26, ¶ 2.e). Less than two weeks after receiving this notice, on April 11, 2022, Plaintiff dismissed Hohm Tech from this suit. In support of his Motion, Plaintiff explains:

> Plaintiff ultimately felt that pursuing Hohm Tech was not a worthy pursuit based on the bankruptcy *and the apparent lack of any funds to satisfy a judgment that might be rendered against it*. Rather than attempt to 'squeeze blood from a turnip,' Plaintiff chose to focus efforts on the entity that ultimately manufactured the exploding lithium-ion battery–Samsung SDI Co., Ltd.

(*Id.* at 28, ¶ 8 (emphasis added)). The Court finds Plaintiff's explanation makes sense, given that it would not be prudent to continue to litigate a case against a co-defendant with no potential for financial remediation when another co-defendant is available and purportedly has the means to pay. The Court thus concludes that Plaintiff did not engage in bad faith by dismissing Hohm Tech from the suit after the removal deadline.

### C. Plaintiff's Inclusion and Dismissal of Samsung America

However, the Court finds that the timing of Samsung America's addition to and dismissal from the suit, coupled with Plaintiff's contradictory explanations for maintaining the suit against Samsung America, support a finding of bad faith. *See Anderson*, 2021 WL 2822398, at *4 ("When evaluating a plaintiff's explanation, courts have found bad faith where the Plaintiff offers inconsistent explanations for dismissal") (citation omitted). Plaintiff added Samsung America to the suit on September 8, 2021, approximately ten months after filing the Complaint and two months before the section 1446(c)(1) deadline. By that time, Plaintiff had conducted considerable discovery against Hohm Tech to determine its liability and the identity of the manufacturer of the lithium-ion battery at issue. That same month, Samsung America explained to Plaintiff that it did not belong in the chain of distribution for the lithium-ion battery and thus, could not be held jointly and severally liable for Plaintiff's harms. Instead of dismissing the California corporation outright at that time, Plaintiff offered to dismiss Samsung America only if Defendant agreed to forego Hague Convention service of process procedures and Answer the Complaint (as opposed to challenging the Complaint or service of process).

Less than a month later, on November 4, 2021 (approximately two weeks before the 28 U.S.C. § 1446(c)(1) deadline), Samsung America filed a Motion to Dismiss for failure to state a claim against Plaintiff. In support of the motion, Samsung America requested the Bankruptcy Court take judicial notice of a decision in another matter holding that Samsung America was not in the chain of distribution of the lithium-ion batteries at-issue and, therefore, could not be held jointly and severally liable. Plaintiff acknowledges that he harbored doubts about Samsung America being a viable defendant in the action. *E.g.*,

(ECF No. 15 at 28, ¶ 9) ("Nor is it clear what role, if any, Samsung America played in the distribution of the exploding battery")). Nevertheless, Plaintiff did not agree to dismiss Samsung America in the action at that time purportedly because "Samsung America did not include a declaration or other admissible evidence with its Motion to Dismiss, merely the decision from another Court." (*Id.* at 27, ¶ 5). Yet, Plaintiff simultaneously claims that he ultimately concluded that Samsung America was not a viable defendant based on this *identical information* in support of the Motion to Dismiss. *See* (*id.* at 28, ¶ 9) ("Plaintiff ultimately came to the conclusion–after receiving and considering the evidence Samsung America submitted in support of its prior, mooted Motion to Dismiss . . . – that it was not a worthy pursuit to keep litigating."). Then, in somewhat contradictory fashion, Plaintiff asserts that he was willing to dismiss Samsung America from the suit without prejudice only if Defendant would agree to accept service and forego the Hague Convention's required procedures. *See* (*id.*); *see also* (*id.* at 10 n.1).[3] Plaintiff states:

> The timing of dismissal is also readily explained. . . . Plaintiff dismissed Samsung America only upon the agreement that the true manufacturer (Samsung SDI) would appear without the need to finalize an expensive, lengthy service process or fight through innumerable pleading and jurisdictional challenges (also completed in March 2022)).

(ECF No. 20 at 4-5 (citing ECF No. 15 at 18, 20, ¶¶ 2e, 8, 9)).

Although Plaintiff harbored doubts about Samsung America being a viable defendant and asserted that Samsung America had failed to provide any admissible discovery on that issue, Plaintiff did not issue a single discovery request against Samsung America during the period Samsung America was named as a defendant. This lack of active litigation lies in stark contrast to the combined 106 Requests for Production, 91

---

[3] Plaintiff's counsel asserts that such litigation tactics are typically used against Defendant. *See* (*id.* at 27, ¶ 4) ("Unlike other cases Plaintiff's counsel has litigated against Samsung entities–where Samsung would accept service of process in exchange for striking punitive damage claims or other relief–[Defendant] in this matter originally insisted on service through the Hague Convention.").

Special Interrogatories, and Formal Interrogatories Plaintiff issued against Hohm Tech and Defendant. The Court finds, based on its consideration of the totality of the circumstances, that Plaintiff's failure to litigate towards Samsung America, coupled with Plaintiff's contradictory explanations for maintaining the suit against Samsung America, demonstrate bad faith overcoming the strong presumption against removal jurisdiction. *See, e.g.*, *Forth*, 2013 WL 6096528, at *3 (finding the plaintiff's explanation that "more discovery was required" to verify the defendant's representations that it was not a proper defendant was "inconsistent," "implausible," and "highly suggestive of bad faith" because the explanation was "contradicted by the fact that the plaintiffs *did not obtain* any further discovery from" the defendant before dismissing it).

Plaintiff cites *Alvarez v. FCA US, LLC* to argue that "the Court need not second-guess Plaintiffs' litigation strategy" when "any non-token amount of discovery entitles the plaintiff to the presumption of good faith." (ECF No. 20 at 5 (citing No. 2:22-cv-02539, 2022 WL 2188386, at *3 (C.D. Cal. June 17, 2022)). The Court finds *Alvarez* to be inapposite for several reasons. First, the plaintiff in *Alvarez* was named to the action at the onset of litigation. 2022 WL 2188386, at *2. Here, Samsung America was amended into the action approximately two months before the section 1446(c)(1) one-year deadline with little explanation offered in its Motion why Samsung America was named to the suit in the first place. Second, the *Alvarez* defendant was dismissed almost two years after the Section 1446(c)(1) deadline. *Id.* Samsung America, however, was dismissed approximately six months after the deadline only after Defendant agreed to relax the Hague Convention's requirements.[4] (ECF No. 15 at 20, ¶ 9). Third, the *Alvarez* plaintiff "actively litigated the case against [the non-diverse defendant] by first, pursuing viable claims against [it], and second, attempting to take discovery." 2022 WL 2188386, at *3. In contrast, Plaintiff was notified on multiple occasions that the viability of his claim against Samsung America was

---

[4] Notably, the parties agreed to this dismissal on March 2, 2022, less than four months after the deadline.

-11-

questionable and yet never served a single discovery request onto Samsung America, despite harboring doubts about its viability in the suit.

Finally, the plaintiff in *Alvarez* dismissed the non-diverse defendant because the defendant had moved to compel arbitration, which is widely considered a valid reason for dismissal. *Id.* at *2; *see, e.g.*, *id.* at *3 (citing *Kalfsbeek*, 540 F. Supp. 3d at 945; *Anderson*, 2021 WL 2822398, at *4). Conversely, gamesmanship, as is evidenced by Plaintiff's explanation for his conduct, has been found not to be a sufficient basis for dismissing a non-diverse defendant past the section 1446(c)(1) deadline. To the contrary, district courts have repeatedly held that such conduct demonstrates "bad faith." *See Heller*, 2016 WL 1170891, at *2-3 (finding "bad faith" because plaintiff did not diligently engage in discovery with the non-diverse defendant and offered contradictory explanations for this delay); *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014) ("[E]ven before amendment's enactment, courts in this Circuit had granted equitable extensions of the one-year removal period in cases where the plaintiff has engaged in strategic gamesmanship to prevent a defendant's removal from state court."); *Forth*, 2013 WL 6096528, at *3 (finding "bad faith" because plaintiff's explanations for "their failure to earlier dismiss [non-diverse defendant] from the action [were] inconstant and implausible."); *In re: Rezulin Products Liab. Litig. (MDL No. 1348)*, No. 00-CV-2843 (LAK), 2003 WL 21355201, at *2 (S.D.N.Y. June 4, 2003) (finding bad faith where the timing of plaintiff's dismissal of non-diverse defendant "suggests strategic behavior was at play"); *Kemp v. CTL Distribution, Inc.*, Civil Action No. 09-1109-JJB-SCR., 2010 WL 2560447, *7 (M.D. La. May 6, 2010) (unpublished opinion) ("the plaintiffs failed to offer any cogent explanation or factual basis for . . . delaying seeking discovery from" the non-diverse defendants before dismissing them), *adopted by*, 2010 WL 2560451 (M.D. La. June 24, 2010), *aff'd*, 2011 WL 3425592 (5th Cir. 2011). Thus, the Court finds the totality of the circumstances are highly indicative of strategic gamesmanship intended to prevent removal.

## IV. CONCLUSION

Accordingly, because the Court finds Defendant has satisfied its burden of showing that Plaintiff acted in bad faith to prevent removal, section 1446(c)(1)'s bad faith exception to the one-year limitation period applies in this case. Therefore, Plaintiff's Motion to Remand is DENIED.

DATED: August 19, 2022



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE